UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
DOCKET NO. 3:15-cv-00570-MOC

JUDY E. ROBERSON,                          )
                                           )
                                           )           ORDER
                        Plaintiff,         )
                                           )
v.                                         )
                                           )
                                           )
CAROLYN W. COLVIN,                         )
Acting Commissioner of Social Security     )
                                           )
                        Defendant.         )
                                           )

        **THIS MATTER** is before the court on Plaintiff's Motion for Summary Judgment (#11)

and Defendant's Motion for Summary Judgment (#15). The matter has been fully briefed and is

ripe for review. Having carefully considered such motions and reviewed the pleadings, the court

enters the following findings, conclusions, and Order.

## FINDINGS AND CONCLUSIONS

### I.    Administrative History

    Plaintiff applied for Supplemental Security Income (SSI) benefits on August 3, 2011,

alleging that she became disabled on March 1, 2011. (Tr. 169). Her claim was denied at the

initial and reconsideration levels for review. (Tr. 115, 131).  Plaintiff filed a timely request for a

hearing before an Administrative Law Judge ("ALJ"). (Tr. 136). A hearing was held before

Clinton Hicks, an ALJ, on October 23, 2013, at which plaintiff had a non-attorney representative

present.[1] (Tr. 53). In a February 2014 written decision, the ALJ denied the plaintiff's claim. (Tr.

---

[1] The record is less than clear on whether the plaintiff was represented at the hearing by counsel. The cited page here calls Melissa Wilson "claimant attorney." (Tr. 53). Later, the plaintiff referred to Ms. Wilson as "my lawyer." (Tr.

15). Plaintiff requested review of the ALJ's decision. (Tr. 13). The request for review was denied by the Appeals Council on September 22, 2015 (Tr. 1), rendering the ALJ's decision the final decision of the Commissioner. <u>See</u> 20 C.F.R. § 404.981. Plaintiff has exhausted her available administrative remedies and the case is now ripe for judicial review under Section 205(g) of the Social Security Act. <u>See</u> 42 U.S.C. § 405(g).

## II.    Factual Background

It appearing that the ALJ's findings of fact are supported by substantial evidence, the court adopts and incorporates such findings herein as if fully set forth. Such findings are referenced in the substantive discussion which follows.

## III.    Standard of Review

The only issues on review are whether the Commissioner applied the correct legal standards and whether the Commissioner's decision is supported by substantial evidence. <u>Richardson v. Perales</u>, 402 U.S. 389, 390 (1971); <u>Hays v. Sullivan</u>, 907 F.2d 1453, 1456 (4th Cir. 1990). Review by a federal court is not <u>de novo</u>, <u>Smith v. Schwieker</u>, 795 F.2d 343, 345 (4th Cir. 1986); rather, inquiry is limited to whether there was "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Perales</u>, 402 U.S. at 401 (internal citations omitted). Even if the undersigned were to find that a preponderance of the evidence weighed against the Commissioner's decision, the Commissioner's decision would have to be affirmed if it was supported by substantial evidence. <u>Hays</u>, 907 F.2d at 1456. The Fourth Circuit has explained substantial evidence review as follows:

> the district court reviews the record to ensure that the ALJ's factual findings are supported by substantial evidence and that its legal findings are free of error. If the reviewing court decides that the ALJ's decision is not supported by substantial

---

820). While Ms. Wilson works for the Piemonte Law Firm (Tr. 158-59), the court finds persuasive that she declared herself a non-attorney in her Acceptance of Appointment form. (Tr. 162). The court accepts that Ms. Wilson is not an attorney as she so declared.

evidence, it may affirm, modify, or reverse the ALJ's ruling with or without remanding the cause for a rehearing. A necessary predicate to engaging in substantial evidence review is a record of the basis for the ALJ's ruling. The record should include a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence. If the reviewing court has no way of evaluating the basis for the ALJ's decision, then the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.

Radford v. Colvin, 734 F.3d 288, 295 (4th Cir. 2013) (internal citations and quotations omitted).

## IV. Substantial Evidence

### A. Introduction

The court has read the transcript of plaintiff's administrative hearing, closely read the decision of the ALJ, and reviewed the relevant exhibits contained in the extensive administrative record. The issue is not whether a court might have reached a different conclusion had it been presented with the same testimony and evidentiary materials, but whether the decision of the administrative law judge is supported by substantial evidence. The court finds that the ALJ's decision was supported by substantial evidence.

### B. Sequential Evaluation

A five-step process, known as "sequential" review, is used by the Commissioner in determining whether a Social Security claimant is disabled. The Commissioner evaluates a disability claim under Title XVI pursuant to the following five-step analysis:

a. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings;

b. An individual who does not have a "severe impairment" will not be found to be disabled;

c. If an individual is not working and is suffering from a severe impairment that meets the durational requirement and that "meets or equals a listed impairment in Appendix

1" of Subpart P of Regulations No. 4, a finding of "disabled" will be made without

consideration of vocational factors;

d.  If, upon determining residual functional capacity, the Commissioner finds that an

individual is capable of performing work he or she has done in the past, a finding of

"not disabled" must be made;

e.  If an individual's residual functional capacity precludes the performance of past work,

other factors including age, education, and past work experience, must be considered

to determine if other work can be performed.

20 C.F.R. § 416.920(a)-(f). The burden of proof and production during the first four steps of the

inquiry rests on the claimant. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995). At the fifth

step, the burden shifts to the Commissioner to show that other work exists in the national

economy that the claimant can perform. Id.

## C.  The Administrative Decision

At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since

August 3, 2011, which was the application date. (Tr. 20). At step two, the ALJ found that the

plaintiff had the following severe impairments: diabetes mellitus, hypertension, hyperlipidemia,

mild mitral insufficiency, coronary artery disease, asthma, chronic obstructive pulmonary

disease, anxiety, depression and "questionable Tourette's Syndrome." (Tr. 20). At step three, the

ALJ determined that the plaintiff did not have an impairment or combination of impairments that

met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404,

Subpart P, Appendix 1. (Tr. 24). At step four, the ALJ found that the plaintiff had the residual

functional capacity (RFC) to perform medium work as defined in 20 C.F.R. § 416.967(c), except

that she was limited to simple, routine, repetitive tasks in a nonproduction environment and

could have no contact with the public. (Tr. 25). While the evidence presented included testimony from plaintiff that worked until 1998, the ALJ determined that the plaintiff had no relevant past work and was an individual of advanced age under the relevant regulations. (Tr. 28). At step five, the ALJ held that "considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant could perform." (Tr. 28). Based on such finding, the ALJ denied plaintiff's claim.

**D. Discussion**

The court has closely read plaintiff's memorandum of law supporting her Motion for Summary Judgment. Plaintiff has made the following assignments of error:

I.      New evidence submitted to the Appeals Council created an "evidentiary gap;"
II.     The ALJ did not express non-exertional capacity in terms of work-related functions;
III.    The ALJ did not make sufficiently clear the basis for his RFC finding for subsequent reviewers; and
IV.    The ALJ did not weigh and consider all of the medical opinions contained in the record.

Plaintiff's assignments of error will be discussed *seriatim.*

**1. An alleged "Evidentiary Gap"**

Plaintiff argues that new evidence presented to the Appeals Council contradicts the findings of the ALJ. Pl. Memorandum in Support of Motion for Summary Judgment 4 (ECF #12). Specifically, the new evidence consists of a questionnaire from a physician which was completed after the administrative hearing. In support of her request for remand, plaintiff argues that "the record before the ALJ did not contain any opinions from treating physicians or even consultative examining sources as to Roberson's residual functional capacity." Pl. Memorandum in Support of Motion for Summary Judgment 4 (ECF #12).

Plaintiff contends that in light of the Fourth Circuit's decision in Meyer v. Astrue, 662 F.3d 700 (4th Cir. 2011), it was error for the Appeals Council to not remand the decision to the Commissioner for further proceedings. It has long been held that evidence is new if it "is not duplicative or cumulative," and is material "if there is a reasonable possibility that the new evidence would have changed the outcome." Wilkins v. Sec'y, Dep't of Health & Human Servs., 953 F.2d 93, 96 (4th Cir. 1991). More recently in Meyer, the appellate court explained that even though the regulations do not require the Appeals Council to make findings when it rejects new and material evidence,

> [i]n view of the weight afforded the opinion of a treating physician … analysis from the Appeals Council or remand to the ALJ for such analysis would be particularly helpful when the new evidence constitutes the only record evidence as to the opinion of the treating physician.

662 F.3d at 706. The court in Meyer pointed out, however, that the regulatory scheme includes no requirement that the Appeals Council articulate any findings when it considers new evidence and denies review. Id. Meyer recognized that it was not an absolute rule that new evidence triggered a remand. Id. at 707 (citing Smith v. Chater, 99 F.3d 635, 638-39 (4th Cir. 1996)).

When the decision in Meyer is closely reviewed, it is readily apparent that the situations faced by the Appeals Council here are much different. In Meyer, the ALJ explicitly noted that the available record specifically lacked "restrictions placed on the claimant by a treating physician." Id. at 707. In this case, the ALJ specifically referred to the treatment notes of Dr. Henry Emery. (Tr. 24). The ALJ's findings clearly discuss Dr. Emery's treatment and clinical assessment of the plaintiff's condition. Further, the ALJ pointed out that the diagnosis of "chronic knee pain" was a "symptom rather than an impairment." See SSR 96-4. Thus, the after-acquired evidence in this case was *not* the only medical evidence from a treating physician.

In determining whether the evidence is both new and material, the evidence must be accompanied by a "reasonable possibility that the new evidence would have changed the outcome." Wilkins, 953 F.2d at 96. The Commissioner concedes that the evidence is "new" but argues that it is not "material." Def. Motion for Summary Judgment 9 (ECF #16). Plaintiff argues that the new evidence would fill an "evidentiary gap," that had the ALJ had the new evidence in front of him it would have been critical to the ALJ's decision, and that it should, therefore, prompt a remand. Pl. Motion for Summary Judgment 5 (ECF #12).

First, the court has considered whether the proposed evidence would have been critical in the ALJ's decision-making process. After closely reviewing the new evidence, the court does not agree that such evidence would be critical as it does little more than reaffirm the ALJ's conclusion that plaintiff's knee pain is a symptom, not an impairment. Further, the critical point at which evidence concerning such knee pain came into play was in the RFC assessment and review of the ALJ's decision and the record reveals that the ALJ had adequate grounds upon which to base his assessment of the plaintiff's RFC, to wit, a report of a physician specifically addressing the plaintiff's RFC.

Second, the ALJ's opinion and the record provides an adequate explanation of the Commissioner's decision. Plaintiff asserts that the record before the ALJ "did not contain any opinions from treating physicians or even consultative examining sources as to Roberson's residual functional capacity." Pl. Motion for Summary Judgment 5 (ECF #12). Plaintiff argues that the lack of medical opinions on RFC creates the "evidentiary gap;" however, the ALJ's opinion record reveals that the ALJ examined and gave significant weight to the opinion of a consulting physician, Dr. Efren Baltazar, and discussed these findings in his decision. (Tr. 28). Review of the record reveals that Dr. Baltazar examined plaintiff in April 2012 and assessed

plaintiff's RFC explicitly. (Tr. 109-10). Thus, there is no "evidentiary gap" to fill as there was

RFC opinion evidence from Dr. Baltazar before the ALJ, the ALJ considered that evidence, and

made a decision thereupon. There was adequate record evidence, that of Dr. Baltazar, regarding

the plaintiff's RFC for the ALJ to reach his determination.[2]  The ALJ based his determination on

substantial evidence.  Plaintiff's assertion of error is denied.[3]

### 2. *Mental RFC and Function-by-Function Analysis*

Plaintiff next contends that that ALJ did not give a complete function-by-function analysis

as required by SSR 96-8 in assessing Plaintiff's mental impairments. Specifically, plaintiff

argues that the ALJ erred by failing to give a complete function-by-function analysis of her

nonexertional mental functions associated with her severe mental impairments. Pl. Motion for

Summary Judgment 6 (ECF #12).  The court disagrees.

The ALJ found that plaintiff has the following degrees of limitation in the broad areas of

functions set out in the disability regulations for evaluating mental disorders and in the mental

disorders listings in 20 CFR, Part 404, Subpart P, Appendix 1: no restriction in the activities of

daily living, moderate difficulties in social functioning, mild difficulties in maintaining

concentration, persistence or pace, and no episodes of decompensation, each of extended

duration. (Tr. 24-25); see 20 C.F.R. § 416.920(a)(c).  In formulating RFC, the "assessment must

first identify the individual's functional limitations or restrictions and assess his or her work-

related abilities on a function-by-function basis." SSR 96-8P, 1996 WL 374184, at *1. The RFC

---

[2]        The court also notes that the opinion from the treating physician was not requested by plaintiff and her
representative until after the ALJ's hearing. (Tr. 820). The plaintiff wrote to the presiding ALJ, "The doctor does not
show any record of receiving anything from [hearing representative Melissa Wilson] until after my court date…That
same day after my court hearing with you, [Dr. Emery's office] said they received a fax from [Melissa Wilson]."
[3]        The court also notes that the plaintiff's representative was expressly asked about outstanding evidence at
the hearing by the ALJ. (Tr. 89). She was granted an extension of five days to obtain additional evidence to submit
to the ALJ. (Tr. 89). Dr. Emery's evidence was not mentioned by plaintiff's representative at that time.

assessment must address both the exertional and nonexertional capacities of the individual. Id. at *5. Nonexertional capacity considers work-related limitations and restrictions that do not depend on an individual's physical strength, such as "an individual's abilities to perform physical activities such as postural (e.g., stooping, climbing), manipulative (e.g., reaching, handling), visual (seeing), communicative (hearing, speaking), and mental (e.g., understanding and remembering instructions and responding appropriately to supervision) . . . it also considers the ability to tolerate various environmental factors (e.g., tolerance of temperature extremes)." Id. Nonexertional capacity must be expressed in terms of work-related functions. Id. at *6. Relevant to the ALJ's finding here, plaintiff was restricted to "simple, routine, repetitive tasks in a nonproduction environment and can have no interaction with the public." (Tr. 25). The "basic mental demands of. . unskilled work include the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting." SSR 85-15, 1985 WL 56857, at *4; see also SSR 96-8P, 1996 WL 374184, at *6 (setting forth work-related mental activities required for competitive work).

Only after a function-by-function analysis has been completed may RFC "be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy." Mascio v. Colvin, 780 F.3d 632, 636 (4th Cir. 2015) (quoting SSR 96–8p, 61 Fed. Reg. at 34, 475). Additionally, SSR 96-8p "explains that the [RFC] assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." Id. (internal quotation marks and citations omitted). The RFC assessment "must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be

accepted as consistent with the medical and other evidence." S.S.R. 96–8p, 1996 WL 374184, at *7. The Fourth Circuit has explained that "expressing the RFC before analyzing the claimant's limitations function-by-function creates the danger that the adjudicator will overlook limitations or restrictions that would narrow the ranges and types of work an individual may be able to do." Monroe v. Colvin, 826 F.3d 176, 187 (4th Cir. 2016) (citation and internal quotation marks omitted).

The Fourth Circuit held in Mascio that remand may be appropriate where "an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." Id. at 636 (quoting Cichocki v. Astrue, 729 F.3d 172, 177 (2d Cir. 2013) (per curiam)). The Circuit declined, however, to adopt a "per se rule requiring remand when the ALJ does not perform an explicit function-by-function analysis," noting that such rule "would prove futile in cases where the ALJ does not discuss functions that are 'irrelevant or uncontested.'" Id. Applying that standard, the Fourth Circuit in Mascio determined remand was appropriate because the ALJ in that case held that the claimant could perform certain functions, but "said nothing about Mascio's ability to perform them for a full workday," despite conflicting evidence in the record on that point. Id. Because the court was "left to guess about how the ALJ arrived at his conclusions on Mascio's ability to perform relevant functions," remand was appropriate. Id. at 637. Even if the ALJ did not conduct an explicit function-by-function analysis, that failure alone is not enough to require remand. See Mascio, supra.

In this case, the ALJ discussed a great deal of medical evidence relevant to Plaintiff's mental impairments. The plaintiff articulates the issue thusly, "[a]t issue in this case is…whether the ALJ fully accounted for his own mild and moderate limitations findings in the residual

functional capacity." Pl. Motion for Summary Judgment 8 (ECF #12). The court finds that he did

so. The court is not "left to guess" at how the ALJ arrived at his conclusions. The ALJ articulated

the "paragraph B" and "paragraph C" criteria (Tr. 24-25). Plaintiff further contends that the ALJ

erred in not accounting for findings of "mild or moderate limitations." Pl. Motion for Summary

Judgment 8 (ECF #12). The ALJ found no restrictions on the activities of daily living and no

periods of decompensation. Neither rose to the level of "mild or moderate limitations." As to the

activities of daily living, the ALJ found no restriction. Based on the record evidence, the ALJ

noted that plaintiff was able to drive herself, cook, go shopping, and had no problem performing

personal care. (Tr. 24). With regard to periods of decompensation, the ALJ found none. (Tr. 25).

Based on the findings, the ALJ's determined that plaintiff had no limitations stemming from

decompensation and no restrictions on the activities of daily living.

With regard to concentration, persistence, or pace, the ALJ determined that the limitation

was "mild." In making this determination, the ALJ detailed that plaintiff could drive, pay bills,

count change, handle a savings account, and use a checkbook. (Tr. 25). Further, the ALJ

discussed plaintiff own statements of her ability to concentrate to watch television, cook, and

read. Plaintiff also drove herself to medical examinations, including extended trips back and

forth between Florida and North Carolina (Tr. 28).

Plaintiff contends that Mascio and the later-decided Reinhardt v. Colvin, No. 3:14-cv-

488, 2015 WL 1756480 (W.D.N.C. April 17, 2015) mandate that the ALJ must translate even

mild mental health impairments into work-related functional limitations. Reinhardt, 2015 WL at

*3 ("…Mascio clearly imposes on the Commissioner a duty to explain why such mild mental

health impairments found at step two do not translate into work-related limitations when

plaintiff's RFC for work is considered.").

First, this case is distinguishable from Mascio, which dealt with a finding of "moderate" limitations, not mild limitations as plaintiff suffers here. Mascio, 780 F.3d at 638 ("Perhaps the ALJ can explain why Mascio's moderate limitation in concentration, persistence, or pace at step three does not translate into a limitation in Mascio's residual functional capacity."). As this case concerns only "mild difficulties," it does not trigger the RFC discussion requirements of Mascio *per se*.

Second, this case is distinguishable from Reinhardt. In Reinhardt, the "ALJ never returned to any discussion of [the claimant's] mental impairments in his RFC findings and therefore omitted any mental impairment when creating an RFC." 2015 WL 1756480 at *4. Such is not the case here. In the present case, the ALJ specifically referred to the opinion of Dr. David Kirk, who evaluated the plaintiff's RFC in April 2012. Dr. Kirk's report found that the plaintiff had no concentration or persistence limitations. (Tr. 111). Further, Dr. Kirk found that the plaintiff appeared to be able to "[u]nderstand and remember simple instructions and sustain them." (Tr. 112). Dr. Kirk referred to "no more than marginal impairment of attention/concentration/short-term memory." (Tr. 108).

Third, far from omitting the mental impairment from his discussion as in Reinhardt, the ALJ here gave significant weight to Dr. Kirk's evaluation of the plaintiff's RFC and crafted the work limitations consistent with this and other record evidence. Indeed, the medical records and support the ALJ's determination that the plaintiff retained the ability, despite her mental limitations, to work in a nonproduction environment performing simple, routine, and repetitive tasks without contact with the public. The court finds such accommodation is sufficient. See Horning v. Colvin, No. 3:14-cv-722, 2016 WL 1123103 at *4 (W.D.N.C. March 21, 2016) (quoting Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1180 (11th Cir. 2011) ("when

medical evidence demonstrates that a claimant can engage in simple, routine tasks or unskilled work despite limitations in concentration, persistence, and pace, courts have concluded that limiting the hypothetical to include only unskilled work sufficiently accounts for such limitations.")).

Moreover, the ALJ found based on plaintiff's own testimony was that "her biggest problem seems to be her unusual barking with abnormal movements…" (Tr. 27). This barking, described as a "tic," was thoroughly discussed in the ALJ's decision. (Tr. 27). Accordingly, the ALJ determined that plaintiff had moderate difficulties in social functioning and based on that finding or a moderate impairment limited her work-related functions to accommodate this issue. (Tr. 28). In discussing this difficulty, the ALJ discussed with whom plaintiff lived, her social calls to family members, and visits to her aunt.

The Commissioner concedes, however, that the ALJ's determination was that plaintiff suffered from a "severe impairment" regarding her social functioning. Def. Motion for Summary Judgment 12 (ECF #16). This severe impairment was her unusual "barking" tic pursuant to her "questionable Tourette's Syndrome." (Tr. 20-21). The defendant contends that the ALJ must either indicate an appropriate accommodation for the impairment or show that the claimant could work despite the impairment. Def. Motion for Summary Judgment 12 (ECF #16). The court finds that the ALJ did indeed take into account this social functioning issue with an accommodation for a nonproduction environment and no contact with the public. (Tr. 28). Moreover, the record clearly shows that plaintiff's symptoms were reasonably controlled with medication and regular treatment. The ALJ further discussed that plaintiff was prescribed medication for the tic but was non-compliant as the medicine "made her feel like a zombie." (Tr. 26).[4] When the plaintiff was

---

[4]     In addition, the record evidence showed plaintiff was in non-compliance with her diabetic dietary restrictions; diabetes-related medication; hypertension medications; and prescribed anxiety medication. (Tr. 27).

compliant with her medications and sought treatment, her symptoms improved. As for her physical symptoms, the plaintiff used an inhaler which improved her shortness of breath. (Tr. 27). Her anti-barking medication, Xanax, helped her with her barking, but "she would rather put up with the tics than take her prescribed medication." (Tr. 27). Indeed, obtaining disability benefits is predicated on following a reasonable treatment plan from medical professionals. See 20 C.F.R. § 416.930 ("In order to get benefits, you must follow treatment prescribed by your physician if this treatment can restore your ability to work.").

It is a well-established rule in this Circuit that if "a symptom can be reasonably controlled by medication or treatment, it is not disabling." Gross v. Heckler, 785 F.2d 1163, 1166 (4th Cir. 1986). Because her mental health symptoms were reasonably controlled by medication and treatment, it is reasonable to determine that they did not affect plaintiff's ability to work. Horning, 2016 WL 1123103 at *4; see Mascio, 780 F.3d at 638.  Therefore, the ALJ's discussion of plaintiff's mental limitations and the resulting RFC finding are supported by substantial evidence. Putting aside plaintiff's issues with being compliant with her medications, the ALJ reasonably accommodated this impairment by examining the record evidence and crafting a work-related limitation that limited the plaintiff to a nonproduction environment and no contact with the public.

The plaintiff claims that the accommodation does not account for, and that there is no discussion of, plaintiff's ability to interact with supervisors and co-workers. Pl. Motion for Summary Judgment 8 (ECF #12). Plaintiff cites to Dr. Kirk's evaluation, to which the ALJ gave substantial weight. Dr. Kirk found plaintiff had moderate limitations in: the ability to interact with the general public; the ability to get along with co-workers; and the ability to maintain socially appropriate behavior. (Tr. 111). Plaintiff calls these internally inconsistent with Dr.

Kirk's opinion that the plaintiff could "complete routine tasks and make simple work related decisions without special supervision," "relate appropriately with coworkers and supervisors," and "adapt to changes in the workplace." (Tr. 111). The ALJ clearly read and weighed Dr. Kirk's assessment in addition to the objective medical evidence in making his determination. The ALJ acknowledged plaintiff's issues with social functioning and crafted an accommodation thereupon. The court finds the ALJ fully accommodated the plaintiff's social functioning impairment by including an appropriate limitation, and that <u>Mascio</u> required no more. Def. Motion for Summary Judgment 12 (ECF #16).

Ultimately, this court's role is to determine whether the ALJ's RFC analysis considered the relevant functions, whether his decision provides a sufficient basis to review his conclusions, and, ultimately whether that decision is supported by substantial evidence in the record. Here, the court is not "left to guess." The ALJ examined the relevant functions and had substantial evidence before him upon which to base his determination.

### 3. Lack of Clarity for Subsequent Reviewers

Plaintiff next argues that the ALJ did not make the basis for his RFC capacity sufficiently clear for subsequent reviewers. Pl. Motion for Summary Judgment 11 (ECF #12). Specifically, the plaintiff argues that the ALJ did not (a) discuss any exposure limitation to fumes, odors or dust; (b) resolve alleged inconsistences in prior medical records regarding moderate social functioning limitations; (c) adequately account for the plaintiff's respiratory difficulties; and (d) properly account for the statement of the plaintiff's daughter. Pl. Motion for Summary Judgment 12-14 (ECF #12).

Regarding environmental limitations, a medical consultant in 2012 indicated that the plaintiff should be limited in her exposure to extreme cold as well as odors, gases, and poor

ventilation, but found plaintiff to be "unlimited" to her exposure to other environmental issues including extreme heat, wetness, humidity, noise, vibration, and hazards such as heights. (Tr. 110). In support of such conclusions, the medical consultant cited a Function Report that indicated that plaintiff could do laundry, ironing, and cleaning as well as driving. (Tr. 110).

In crafting his determination, the ALJ discussed plaintiff's asthma and chronic obstructive pulmonary disease (COPD). (Tr. 27). With an inhaler, he found that her breathing is "better," that her lungs have been repeatedly described as clear in physical examinations. (Tr. 27). He also found that despite claims of being unable to work where exposed to environmental pollutants, plaintiff continued to smoke, and the ALJ wrote that this suggested that the symptoms related to the COPD and asthma were "not disabling." (Tr. 27). He cited the fact that plaintiff's COPD and asthma have not resulted in emergency treatment and that the symptoms improve when treated. (Tr. 27).

Where there is competing evidence of record, it is the role of the ALJ to determine which evidence to more fully credit. In completing that task, the ALJ has the burden of explaining his determination. The ALJ assessed the available evidence, but did not incorporate the environmental limitations contained in the Disability Determination Explanation; consistent with his obligation, the ALJ explained that the respiratory symptoms were relatively controlled with medication. There is substantial evidence in the record which the ALJ cited in support of such determination and it is not the court's role to second guess the ALJ. Rather, the court's role is determine whether that conclusion finds support in substantial evidence of record. Review of the decision reveals that the ALJ cited to the record evidence that supported such decision and that such record evidence appears to the court to be substantial.

Next, plaintiff alleges that the ALJ did no resolve alleged inconsistencies concerning plaintiff's ability or inability to get along with co-workers. As noted before, the ALJ acknowledged plaintiff's unusual barking tic and provided a work related accommodation for that problem. The plaintiff was to have no contact with the public for her increasingly-infrequent tic episodes, which the ALJ concluded would have been better controlled if the plaintiff was compliant with her medication, and that these tic episodes were occurring only a couple times per week. (Tr. 27). Further, the ALJ explained his concern over the credibility of the plaintiff's alleged Tourette's syndrome and the manifestation of such condition in the form of barking. He called it "questionable" (Tr. 20) and noted that the plaintiff's motivations were "seriously called into question" as she only sought disability after she had depleted the proceeds of her divorce settlement. (Tr. 27). He noted that the tics themselves did not start until after the divorce. (Tr. 26). He acknowledged medical reports that her barking were labeled a "psychosomatic illness" and were only displayed in front of physicians. (Tr. 27). Plaintiff was able to hold her tongue out without any barking or movement. She did not display the barking while alone. She did not display the tics during post-evaluation counseling, where she was able to discuss her financial status and disability application without interruption from these "questionable" tics. (Tr. 27).

Thus, the ALJ was not obligated to make a work accommodation for a condition which had never manifested itself outside the physician/patient relationship, in particular in a work-related setting. Here, the ALJ made a reasonable accommodation by providing a limitation as to contact with the public. Based on his explanation, the ALJ was under no obligation to make accommodation for the tic in potential interactions with co-workers or supervisors as there was no evidence that such condition manifested itself outside of the physician-patient setting.

Plaintiff next argues that her severe COPD and asthma were not taken into account by the ALJ in addressing her RFC. It is quite the opposite. First, at step two, the ALJ found these impairments to be "severe." (Tr. 20). In addressing these impairments at step four, the ALJ was required to consider all medically-determinable impairments whether severe or not in assessing the plaintiff's RFC. See 20 C.F.R. § 416.945(a)(2). He expressly discusses the medication (Advair) that plaintiff was prescribed and determined plaintiff's COPD and asthma were relatively well-controlled by the use of the inhaler, her shortness of breath was "better" when using the inhaler, her lungs were clear despite her continued smoking, and her respiratory difficulties had never required emergency treatment. (Tr. 27). Thus, the ALJ adequately explained why the step-two impairments did not result in limitations to RFC at step four, citing substantial evidence of record which supports such conclusion. The court finds no error.

Plaintiff next argues that the ALJ did not properly account for the opinion evidence presented, specifically the opinion of plaintiff's daughter, Linda Smith. The court cannot square this argument with the written decision of the ALJ as it is abundantly clear that not only did the ALJ consider Ms. Smith's opinions, he discussed them at length at several places in the decision, as follows:

> On a third party function report submitted by the claimant's daughter, Linda Smith, in September 2011, she indicated that the claimant had no problem in performing her personal care. (Exhibit 4E2). She further indicated that the claimant was able to cook, drive, go shopping, and engage in cleaning, laundry, and ironing. (Exhibit 4E3-4). The claimant reportedly drove herself to her consultative medical
>
>                       \* \* \*
>
> On the function report submitted by Mrs. Smith, she indicated that the claimant talks to family members over the phone on a regular basis.
>
>                       \* \* \*
>
> With regard to concentration, persistence or pace, the claimant has mild difficulties. On the function report submitted by the claimant's daughter in

September 2011, Mrs. Smith indicated that the claimant could drive, pay bills, count change, handle a savings account, and use a checkbook/ money order.

***

The claimant's self-reported activities of daily living and those reported by her daughter further suggest that her impairments are not disabling.

(Tr. at 24-25, 28 (<u>citing</u> Exhibit 4E)).[5]  Despite the ALJ specifically discussing Ms. Smith's opinions at multiple locations in his decision and referencing the exhibit from which it was drawn, the plaintiff argues that the opinion of the plaintiff's daughter was dismissed out-of-hand. This court disagrees with such characterization as such evidence was not "disregarded" as plaintiff suggests, but instead the ALJ considered the statements and weighed it alongside other evidence which was inconsistent with Ms. Smith's observations.

To the extent that plaintiff's argument is that the ALJ did not give such opinion evidence appropriate weight, an ALJ is not required to give dispositive weight to opinions of a lay witness. In <u>Morgan v. Barnhart</u>, 142 F.App'x. 716, 2005 WL 1870019 (4th Cir. 2005), the Fourth Circuit addressed what consideration an ALJ must give to corroborative lay opinions submitted in accordance with Part 404.1513(d). There, the appellate court, while ultimately not reaching the issue, agreed that an ALJ could not simply discredit lay evidence based on inherent familial bias; instead, the appellate court found that the ALJ properly discredited such lay opinions as not consistent with the medical record and the functional capacity evaluation. <u>Id.</u> at 724-25. Here, review of the portions of the ALJ's decision discussing Ms. Smith's opinions reveals that the ALJ in no manner discredited Ms. Smith's opinions on a familial basis, but specifically referenced the medical and other evidence which informed the conclusions he drew from Ms. Smith's narrative opinions. (<u>See</u> Tr. at 24-25, 28). Here, the ALJ mentioned the daughter's opinion and the available evidence and afforded the daughter's opinion less weight to the extent it was inconsistent with

---

[5]        Review of the Transcript of the Administrative Hearing reveals that Ms. Smith did not testify.

other available evidence, which he also discussed. (Tr. 28). This does not amount to what plaintiff terms "wholesale dismissal [of] Smith's statement." Pl. Motion for Summary Judgment 14 (ECF #12). Rather, the ALJ considered the Ms. Smith's opinions in light of the other evidence which touched on the issues she addressed, fully complying with <u>Morgan</u>. The plaintiff's argument is without merit.

### 4. Consideration of All Sources

The plaintiff next argues that the ALJ failed to discuss and weigh every medical opinion received and contained in the record. Pl. Motion for Summary Judgment 15 (ECF #12). In this section of her Motion for Summary Judgment, the plaintiff quotes 20 C.F.R. § 416.927 (c) at length. The plaintiff here has several lines of argument: (a) the new evidence from Dr. Emery was not evaluated by a factfinder, (b) the ALJ never considered the vocal tic when assessing the plaintiff's RFC, and (c) there are inconsistences in the medical records that are not adequately assessed. These arguments are also raised by plaintiff in earlier assignments of error, but are again asserted here in support of a claim that the ALJ failed to consider all sources as required under the Regulations.

First, as previously discussed, the court has disposed of plaintiff's argument that Dr. Emery's opinion evidence has never been evaluated by a factfinder, noting again that it was not before the ALJ as it did not then exist and that there was no "evidentiary gap" to fill as no void existed.

Second, plaintiff's assertion that the ALJ did not include anything about the vocal tic in his RFC determination is not supported by the record. The ALJ discussed the vocal tic for multiple paragraphs in his decision. (Tr. 27). The vocal tic was also expressly mentioned by the

ALJ in fashioning the work limitations of a nonproduction environment and his determination that plaintiff could have no contact with the public. (Tr. 28).

Third, plaintiff argues that there are inconsistencies in the medical records that are not adequately assessed and are contrary to the ALJ's RFC assessment. Pl. Motion for Summary Judgment 16 (ECF #12). In particular, plaintiff argues that the medical records are inconsistent on what plaintiff can lift. The court cannot find any inconsistency as the record provides that plaintiff was able to lift 20 pounds during an examination with a consultative examiner (Tr. 335) and that another physician relied upon those notes when assessing plaintiff's ability to lift. (Tr. 704-05). This is not inconsistent. The first doctor recorded an observation and the second set a maximum. Plaintiff argues that a state agency physician, Dr. Hurley Knott, set limitations that the ALJ did not include in his RFC assessment. Those limitations include restrictions on plaintiff's climbing, crawling, reaching, unprotected heights, and exposure to extreme cold and poor ventilation. (Tr. 702-03). This state agency physician found the primary diagnosis of "asthma," and reviewed the plaintiff's file for other alleged impairments, including pulmonary nodules and hypertension. The ALJ noted that he was giving specific weight to the opinion of Dr. Baltazar in concluding that plaintiff had the ability to frequently lift 25 pounds and occasionally lift 50 pounds. The opinion of the state agency physician is consistent with Dr. Baltazar's opinion evidence on that point. (Tr. 701). The ALJ generally gives more weight to examining sources rather than sources that have not examined a claimant. 20 C.F.R. § 927(c)(1).

In support of plaintiff's position, plaintiff cites to <u>Foster v. Astrue</u>, 826 F.Supp.2d 884 (E.D.N.C. 2011). <u>Foster</u> is distinguishable here as that court held, as follows:

> [G]iven the extent of the opinion testimony by Ms. Demetry and her status as a treating medical source, the Court finds that the ALJ erred in not better articulating her reasons for finding that Ms. Demetry's testimony was inconsistent with the weight of the medical evidence.

Foster, 826 F.Supp.2d at 887 (citations omitted). Rather than the treating source in Foster, the indications of the state agency physician here were that of a nontreating source. The Fourth Circuit has found that treating sources are afforded special weight and the ALJ would need "specific and legitimate grounds to reject" such treating source opinions. Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001). The nontreating source is afforded less weight both under Fourth Circuit precedent and 20 C.F.R. § 927(c)(1). Moreover, the extent of opinion evidence offered by this nontreating source falls far short of the extent of the opinion evidence offered by the *treating* source in Foster. Put simply, the ALJ's error in not better discussing the opinion of a nontreating source is harmless. This is particularly true as the ALJ specifically discussed each of the plaintiff's impairments and the opinion of the state agency physician and that of Dr. Baltazar are consistent on the point to which the ALJ gave significant weight, plaintiff's ability to lift.

The state agency physician's review of the record occurred in September 2012; some 18 months later, the ALJ made his determination based on a record which was more fully developed. Specifically, the state agency physician reviewed the record based largely on respiratory issues. Based on additional evidence which he discussed in his written decision (as discussed above), the ALJ found that these impairments were sufficiently under control through the use of an inhaler. The ALJ further found that the plaintiff's continued smoking suggested that the respiratory issues were "not disabling." Indeed, the ALJ specifically cited to Exhibit 18F, the medical source that plaintiff says was not evaluated, when making this statement. (Tr. 27). The ALJ refers to Exhibit 18F at least two other times on that page of his decision. (Tr. 27). The ALJ also noted that the

plaintiff's hypertension, diabetes mellitus, and additional mental health impairments "have generally been controlled with medication and diet." (Tr. 27).

Far from disregarding the state agency physician's limitations contained within Exhibit 18F, the ALJ puts them in context. That state agency physician relied on a record of a claimant that, at that stage of development, indicated that the plaintiff suffered primarily from a respiratory issue, asthma. The ALJ discussed Exhibit 18F more broadly and the respiratory issues of asthma and COPD, specifically, to find that they were not disabling. (Tr. 27). As they were not disabling for the reasons discussed by the ALJ, his decision to not include them as limitations at step four or craft work limitations around them finds support in the reasoning as well as the Administrative Record.

### E. Conclusion

The undersigned has carefully reviewed the decision of the ALJ, the transcript of proceedings, plaintiff's motion and brief, the Commissioner's responsive pleading, and plaintiff's assignments of error. Review of the entire record reveals that the decision of the ALJ is supported by substantial evidence. See Richardson v. Perales, supra; Hays v. Sullivan, supra. Finding that there was "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," Richardson v. Perales, supra at 401, plaintiff's Motion for Summary Judgment will be denied, the Commissioner's Motion for Summary Judgment will be granted, and the decision of the Commissioner will be affirmed.

### ORDER

**IT IS, THEREFORE, ORDERED** that:

(1) the decision of the Commissioner, denying the relief sought by plaintiff, is **AFFIRMED;**

(2) Plaintiff's Motion for Summary Judgment (#11) is **DENIED;**

(3) the Commissioner's Motion for Summary Judgment (#15) is **GRANTED;** and

(4) this action is **DISMISSED.**

Signed: October 4, 2016

Max O. Cogburn Jr.
United States District Judge